THE PEOPLE OF THE STATE OF NEW YORK EX REL. CHARLES R. PURDY, EXECUTOR, AND CAROLINE S. SHANNON, EXECUTRIX, ETC., OF ANN LOHMAN, DECEASED, RESPONDENTS, v. WILLIAM P. ESTERBROOK, INSPECTOR OF BUILDINGS, AND CORNELIUS VAN COTT AND OTHERS, FIRE COMMISSIONERS OF THE CITY OF NEW YORK, APPELLANTS.

*Building act of New York city* — 1874, *chap. 547, sec. 8* — *refusal of the department of buildings to grant an application made under it* — *its action cannot be reversed by the board of examiners.*

Where, upon an application made for leave to alter and enlarge a building in the city of New York, the department of buildings has refused to grant it and to exercise the power conferred upon it by section 8 of chapter 547 of 1874, authorizing it to modify or vary the provisions of the building acts to meet the requirements of a particular case, the applicant has no right under the said section to compel the question thus passed upon to be presented to the board of examiners, provided for in the act, for its consideration, and, if that board decides in his favor, to compel the department of buildings to make the necessary modification of or variation from the provisions of the building acts. (BRADY, J., dissenting.)

The assent of the board of examiners is made necessary before the department of buildings can modify in a particular case the provisions of the building acts, but where the department refuses to make such modification, the board of examiners has no power to review its action.

APPEAL from an order of a Special Term held at chambers, granting the application of the respondents for a writ of *mandamus* requiring the inspector of buildings in New York city to submit the application of the relators to the board of examiners, and if approved by such board, to issue a certificate of approval of said application to the relators.

*W. L. Findley,* for the appellants.

*R. H. Shannon,* for the respondents.

DAVIS, P. J.:

The motion made to dismiss the appeal in this case, on the ground of acquiescence in the order on the part of the appellants, is not well founded. It appears that a stay of proceedings, with a view to

an appeal, was denied by the learned judge who granted the order, with leave to renew the application for such stay after the board of examiners should have acted. The respondents were therefore compelled by the writ of *mandamus* to present the application to that board, and the affidavits show that they did so under protest, insisting, as they now do, that the case was not a proper one for the consideration of that board. Immediately after the action of the board of examiners the application for a stay pending the appeal was renewed and then granted by the learned judge, who, upon granting the same, pronounced an opinion giving his reasons for making the original order, substantially to the effect that he acted altogether upon the decision of a previous Special Term which he regarded as binding upon him, and showing that he regarded the question as a doubtful one, proper to be reviewed upon appeal. There is nothing in the proceeding to justify the idea that the appellants have in any manner waived their right to appeal. The motion to dismiss the appeal should therefore be denied.

The questions presented by the appeal arise under section 8 of chapter 547 of the Laws of 1874, and involve merely the construction of that section. The respondents, as owners of a building on the corner of Fifty-second street and Fifth avenue, in the city of New York, presented their application and filed their plans and specifications in the bureau of inspection of buildings in the fire department, for leave to make certain proposed alterations in said building, consisting in part of the erection of two additional stories thereon and raising the building from a four story to a six story one, and the walls from sixty-three feet to eighty-nine feet in height above the curb. The appellants disapproved of so much of the application as related to the raising of the height of said building from four stories to six, and the height of the walls as above stated, on the ground, as is alleged in their answer, that the detailed statement of the plans for the same was not in accordance with the provisions of the laws relating to buildings in the city of New York, and that the granting of the same would conflict with public safety and the public good, and would not be in furtherance of justice.

It seems not to be in dispute that to authorize the erection of the desired additions to the height of the building, would demand a deviation in some respects from the requirements of the statutes

regulating the construction, alteration and repair of buildings in the city. By section 8 of chapter 547 of the Laws of 1874, the department of buildings is clothed with power, under certain limitations, to make such deviations from, and to modify or vary any of the provisions of the act, to meet the requirements of special cases where the same " do not conflict with the public safety and the public good, so that substantial justice may be done." The portions of that section material to the question before us, are in the following words:

" The department of buildings named under this act shall have full power in passing upon any question relative to the mode, manner of construction, or materials to be used in the erection, alteration or repair of any building in the city of New York, where the same is not specially provided for herein, to make the same conform to the true intent, meaning and spirit of the several provisions hereof, and shall also have discretionary power, upon application therefor, to modify or vary any of the several provisions of this act to meet the requirements of special cases where the same do not conflict with the public safety and the public good, so that substantial justice may be done ; but no such deviation shall be permitted except a record of the same shall be kept by said department, and a certificate be first issued to the party applying for the same ; such certificate shall be issued only upon an application setting forth the facts sworn to by the applicant, and after such application shall have been passed upon favorably by a board of examiners, consisting of the superintendent of buildings, a member of the examining committee of the New York Chapter of the American Institute of Architects, one of the ex-presidents of the New York Board of Underwriters, and two members of the Mechanics and Traders' Exchange of said city, one of the latter of whom shall be a master carpenter, and one a master mason, all of whom, except the said superintendent, shall be selected by their respective organizations, and so certified by the proper officers to the said superintendent ; no application shall be considered as passed by said board, unless the same receive three affirmative votes."

The important question presented in the case is whether where the department of buildings on such an application has refused to modify or vary the provisions of the act to meet the requirements

of a special case, on the ground that to do so would conflict with public safety and the public good, and substantial justice would not be done, the applicant has a right under this section to compel the question thus passed upon by the department to be presented to the board of examiners for its consideration, and if that board pass favorably to him, then to compel the department of buildings to make the necessary modification of or variation from the provisions of the act. We think it very clear that no such system of appeal from the decision of the department of buildings was intended to be created.

The section clothes the department with the very extraordinary but doubtless necessary power to meet the exigencies likely to arise in the city in cases where strict compliance with the provisions of the act can be dispensed with without conflicting "with public safety and the public good." But it imposed upon the exercise of that power certain restrictions, intended to prevent its abuse. Those restrictions are made by the section conditions precedent to the exercise of the power, so that the department should have power to make the deviations only in cases where those conditions precedent have been first complied with. After conferring the discretionary power upon the department to modify or vary the provisions of the act, the section proceeds as follows :

" But no such deviation shall be permitted except a record of the same shall be kept by said department, and a certificate be first issued to the party applying for the same. Such certificate shall be issued only on an application setting forth the facts sworn to by the applicant, and after said application shall have been passed upon favorably by a board of examiners."

This language does not create an appellate tribunal, with power to review and overrule the determination of the department of buildings in refusing to exercise its discretionary power to deviate from the requirements of the statute, on the ground that such deviation would conflict with public safety and the public good ; nor does it authorize the board of examiners to interfere to any extent with the decision of the department *when adverse to such an application.* On the contrary, it requires that the favorable action of the board of examiners shall precède the decision of the department to deviate from the law. The sole purpose of these

provisions is to place upon the power given to the department of buildings to modify, vary and deviate from the requirements contained in the several provisions of the act, even where the department is of opinion that such deviations do not conflict with public safety and the public good and are necessary to substantial justice, the necessity of having the assent to such action, before any step is taken upon it, of the board of examiners created by the section, indicated by at least three affirmative votes, which is a majority of all the members of that board. But there is no provision requiring the assent of the board of examiners, or any action on its part to a refusal of the department of buildings to make such deviation; nor is there any right of appeal to the board of examiners given from such refusal. In short, the assent of the board of examiners is made necessary to the act of setting aside or varying from the statute, but not to any refusal to do so.

The decision of the court below gave an altogether erroneous construction to the section. It appears by the opinion of Mr. Justice CULLEN on granting the stay, that the application for the writ was not argued at Special Term, but was granted upon what was supposed to have been a previous decision of that court which he considered as conclusive upon him, though, as he says in his opinion, adverse to his views of the statute. Our construction of the statute agrees with that indicated in the opinion of the learned justice as the true one, and it follows that the order must be reversed and the writ denied, with ten dollars costs of the appeal besides disbursements.

DANIELS, J.:

From the return made it is evident that the board, having power to modify or vary the provisions of the act from which the relators desired to be relieved, declined to provide for that relief for the reason that to do so would conflict with the public safety and the public good, and that substantial justice would not be done thereby; and the inspector of buildings also agreed to this conclusion. Whether this should or should not be done was a subject committed to the sound discretion of these officers. They could not favorably exercise that discretion without the preceding action of the board of examiners recommending that course. But as full discretion

was vested in them over this subject, even such action would not require them so to exercise it as to make a favorable disposition of the application. They could still determine against it after the board of examiners should recommend its allowance. There is nothing in the act preventing them from denying the application without the action of the board of examiners. On the contrary, the power to make such a denial is clearly to be implied from its terms. They cannot modify or vary the act without the favorable action of the board of examiners, and that is the utmost of the restraint placed upon them. Accordingly, if they deem the case an improper one for the exercise of the discretion vested in them, they have the power so to decide at once, as they appear to have done in this case. (Laws 1874, p. 737, § 8.) After such a decision there can be nothing to be submitted to the board of examiners. Their action can amount to nothing if it should be taken, and a writ of *mandamus* would be of no possible service to the applicants under the circumstances. The decision made by the respondents was within the range of the discretion given to them. They refused to vary or modify the act, and that refusal must be considered as final. Concurrence is, therefore, given to the opinion of the presiding justice.

BRADY, J., dissenting:

The plaintiffs, who were the owners of a building on the corner of Fifty-second street and Fifth avenue in this city, filed their plans and specifications in the bureau of inspection of buildings in the fire department for proposed alterations to be made to the buildings named, and among other things to put two additional stories thereon, raising it from a four-story to a six-story building, and the walls from sixty-three feet to eighty-nine feet in height above the curb, and the application was presented to the appellant Esterbrook, who was the inspector of buildings appointed under chapter 521 of the Laws of 1880, for the proper certificate for allowing such alterations to be made; and subsequently an application was made to the board of fire commissioners, asking that it act upon the application, based, it would seem, upon the refusal of the inspector to grant the required certificate and upon the asserted right, under the laws relating to the subject, to have the action of the inspector reviewed by the board named.

The act of 1880 mentioned (*supra*), is an amendment of an act to reorganize the local government of the city of New York, passed in 1873, and provides, by the seventy-sixth section, as amended, that the fire department shall have for its head a board to consist of three persons to be known as the fire commissioners of the city of New York. And further, that there should be in the department four bureaux, one of which should be known as the bureau for the inspection of buildings; and it is declared that all acts relating to buildings in the city of New York, and all acts and parts of acts relating to the department of buildings in said city, or prescribing, limiting or defining the powers or duties of said department or any officer thereof, then in force not inconsistent with this act, were continued in full force and effect and the powers and duties transferred to the fire department of the city of New York and devolved upon the officers thereof. It also declares that the bureau of inspection of buildings shall, under and subject to such rules and regulations and orders as may be established by the board of fire commissioners, have charge of all matters relating to buildings and structures in the city of New York then by law devolved upon or required to be performed by the department of buildings. And further, that the bureau should be under the management of a person who should be known as inspector of buildings, who might be authorized by the board of fire commissioners to perform any duty or exercise any power or authority then conferred upon the superintendent of buildings.

The question presented by this appeal is whether the inspector of buildings has the power to refuse to give such a certificate as applied for, absolutely in the exercise of his discretion. It does not appear in this case whether any rules, regulations and orders have been established by the board of fire commissioners governing the bureau of inspection of buildings, or what duties, power or authority conferred by law upon the superintendent of buildings the inspector has been authorized by the board of fire commissioners to perform or exercise. These two elements are embraced in the act of 1880, to which reference has been made as we have seen, and it would seem, therefore, that some action of the board of fire commissioners, defining the authority of the inspector of buildings, was necessary in order to enable him to act with full authority in reference to the

affairs of the bureau. As no point in regard to this subject has been made, it must be assumed, for the purposes of this appeal, that the board of fire commissioners has conferred upon the inspector of buildings all the authority which was possessed by the superintendent under existing law.

Under the act of 1862 (chap. 356), which was designed to provide for the regulation and inspection of buildings and the more effectual prevention of fires and the better preservation of life and property in the city of New York, a department was created for the survey and inspection of buildings in the city of New York which, by section 49, declared, it to be the duty of the deputy superintendent of buildings to examine all buildings * * * under an application to raise, enlarge, alter or build upon them, and to report to the superintendent the condition of the same, with his opinion relative thereto, declaring that in the absence of the superintendent he should be empowered to act with all the powers enjoyed and possessed by the latter. This provision contemplated the action of two persons upon an application to alter, build upon, raise or enlarge a building, namely, the opinion of the deputy superintendent, whose duty it was to make the necessary examination and report the same with his opinion to the superintendent, and that of the superintendent himself. The act of 1866 (chap. 873), and which was an act to amend and reduce to one act the several acts relating to buildings and the keeping and storage of combustible materials in the city of New York, also provided by section 45 that it should be the duty of the deputy superintendent of buildings to make the same examination as that prescribed by the act of 1862, and to report the result with his opinion, to the superintendent; and provided as well, that in the absence of the latter, he should be empowered to act with all the powers enjoyed and possessed by the superintendent. Section 36 of the act of 1862 also gave to the department created by it, full power in passing upon any question relative to the mode or manner of construction, or materials to be used, in the erection, alteration or repair of any building in the city of New York, where the same was not specially provided for therein, and also gave the department discretionary power, upon application, to modify or vary any of the several provisions of the act to meet the requirements of special cases, where the same did not conflict with

the public safety and good, so that substantial justice might be done; but further provided that no such deviation should be permitted except upon a record of the same to be kept by the department and a certificate to be first issued to the party applying for the same, such certificate to be issued only upon an order first being obtained therefor, upon a sworn petition setting forth the facts upon such an application, to a Special Term of the Supreme Court. The act of 1866 (*supra*) contains substantially the same provision, as does also the act of 1871 (chap. 625).

By section 8 of the Laws of 1874 the provision just considered was re-enacted but a change was made to this effect, namely, that the certificate allowing the alteration should be issued only upon an application setting forth the facts sworn to by the applicant; and after the application should have been passed upon favorably by a board of examiners, consisting of the superintendent of buildings, a member of the executive committee of the New York Chapter of the American Institute of Architects, one of the ex-presidents of the New York Board of Underwriters and two members of the Mechanics and Traders' Exchange of this city, one of the latter of whom should be a master carpenter and one a master mason, and all of whom except the superintendent should be selected by the respective organizations and so certified by the proper officers to the superintendent; and, further, that no application should be considered as passed by said board unless the same should receive three affirmative votes, and each member of the board being prohibited from passing upon any question in which he was pecuniarily interested.   The change made was by taking away from this court the power to approve of the certificate and conferring it upon the persons named.

It will be perceived, as to these provisions embracing substantially all that has been enacted on the subject, that no express right was given to appeal from the decision of the superintendent of buildings or inspector of buildings, upon whom was conferred all the power given to the superintendent of buildings; and that unless the right to review his act arises inferentially the refusal to give the certificate is absolute.   It will also have been perceived that when the certificate is given by the inspector of buildings, in the exercise of his discretion, it is not sufficient to authorize the alteration to be

made because it must be approved by the persons designated by the act of 1880, and it follows that in reference to the alterations the certificate by the inspector of buildings is not absolute but necessarily subject to ratification. It will likewise have been perceived that under the original statutes the examination to be made of the building, predicated of an application to alter, raise or enlarge it, must have been made by the deputy superintendent, who was required to make a report of his proceedings and their results with his opinion thereon. And this was to be done whether the certificate was given or not, or whether the application was to be granted or not, the statute being silent as to the result of such examination by the deputy superintendent.

The question involved in this appeal, as already suggested, namely, whether the inspector of buildings has the right to refuse absolutely, as a matter of discretion, to grant an application to enlarge, raise or alter a building depends entirely upon the interpretation to be given to these various acts and the object intended to be secured by them. If the application be granted in the first instance it is, as we have seen, subject to revision ; and although the inspector of buildings may think that the alteration, or enlargement, or repairs should be allowed, nevertheless the persons designated have the power to control it, and there does not seem to be any good reason why the refusal to grant the application, in the exercise of the discretion, should not be subject to a similar revision. It is impossible to conceive that the legislature intended to confer upon one person, being the head of a bureau, the absolute power of determining whether an alteration or an enlargement of a building should be made. It is the fire department which has control of the subject, according ·to the language of the law, and the inspector is the mere agent employed as a part of the machinery by which the necessary information shall be obtained and communicated to the board.

Section 31, as amended by the act of 1874 (*supra*), declares that the department of buildings named under the act shall have full power in passing upon any question relative to the mode or manner of construction, or materials used in the erection, alteration or repair of any building in the city of New York, where the same was not specially provided for therein. The result of the refusal to give the certificate is not provided for. The power over the sub-

ject resided with the department of buildings prior to the act of 1880, which transferred it to the fire department, as we have already seen. Inasmuch as there might be an abitrary refusal to grant the certificate in a proper case, and in order to provide against such a contingency, it would seem to be a very just interpretation of the statutes that such a refusal should be subject to the review of the fire department, and thus secure the co-operation of the department, of which the bureau of inspection of buildings is only a subordinate branch. The fire department, acting as a body, would have the power then to protect the citizen from an unjust refusal to grant the certificate in a proper case, and could direct the certificate to be furnished, and *vice versa*. Then the certificate, if given, would be subject to approval by the board of examiners created under the act of 1880, to which reference has been made. If this construction of the statutes be not favored, an application such as made by the respondent herein, even though it were unjustly refused in the exercise of a discretion erroneously employed, could not be overcome by any remedy.

- For these reasons, we think the order appealed from should be affirmed.

Order reversed and writ denied, with ten dollars costs and disbursements.